**Charles P. MILLER**

v.

**GENERAL MOTORS CORPORATION, INTERNATIONAL UNION, UAW and its Local Union No. 499**

**No. IP 79–485–C.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

April 23, 1981.

---

Gregory A. Purvis of Law Firm of Kenneth Kern & Assoc., Indianapolis, Ind., for plaintiff.

Herbert C. Snyder, Jr., and Douglas E. Starkey, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for General Motors Corp.

Nora L. Macey, Attorney, Indianapolis, Ind., for Unions.

## MEMORANDUM ENTRY

NOLAND, District Judge.

This cause comes before the Court upon the motions of the defendants for summary judgment. Before examining the various motions and arguments of the parties, a brief review of the facts giving rise to this lawsuit is necessary.

Plaintiff Charles P. Miller was hired by defendant General Motors Corporation on August 17, 1969. On July 11, 1978, plaintiff went on indefinite sick leave and was treated for various ailments by Dr. Leland Brown, an orthopedic specialist, and Dr. Max Rudicel, a family physician. Subsequently, plaintiff returned to work on September 25, 1978, armed with a statement from Dr. Brown authorizing his return as of September 19, 1978.

During the period of plaintiff's sick leave, a collective bargaining agreement existed between General Motors and the U.A.W. (See plaintiff's Exhibit A, attached to his

complaint.) This agreement contained the following provision which governed a return to work after a leave of absence:

(111) All of the above leaves of absence including sick leaves are granted subject to the following conditions:

... (b) Any employee who fails to report to work within three working days after the date of expiration of the leave, shall be considered as having voluntarily quit unless he has a satisfactory reason....

Because of the above provision, plaintiff was notified by company officials that he was terminated as a voluntary quit for not having returned to work by September 22, 1978. Thereafter, the Union filed a grievance on plaintiff's behalf, demanding reinstatement and back pay. Plaintiff then obtained a second release on October 2, 1978, from Dr. Rudicel which indicated a release date of September 22, 1978. Plaintiff argued that the second release satisfied the requirement of section 111(b).

Subsequent investigations by both the Company and the Union determined that Dr. Rudicel had filled out the second release at plaintiff's request, but had not examined plaintiff between September 19 and September 28. (See Affidavit of George R. Mapes.) The Company therefore continued to oppose plaintiff's request for reinstatement and the Union eventually withdrew the grievance on December 15, 1978. Following the Union's withdrawal of his grievance, plaintiff filed the instant lawsuit.

Plaintiff brings this action pursuant to Section 301 of the Labor Management Relations Act. Relief is sought against the employer, General Motors Corporation (GM), and both the Local and International Union bodies of the U.A.W. (Union). Plaintiff's complaint alleges that defendant GM wrongfully discharged plaintiff in violation of the collective bargaining agreement and that defendant Union breached its duty of fair representation by failing to pursue plaintiff's grievance. In response to the complaint, all defendants now seek summary judgment based upon plaintiff's alleged failure to exhaust mandatory intra-union grievance procedures.

The exact appeals procedure available to plaintiff is set forth in the UAW Constitution, Article 33, Sections 1–12. (See Affidavit of Carolyn J. Forrest, Exhibit 1.) Pursuant to Article 33, a decision of any local union official on grievances may be appealed within 60 days to the local union membership. The decision of the local union body may then be appealed to the International Executive Board in writing within 30 days after the local union action or within 45 days of the appeal to the local union body if no action is taken. If satisfaction is not obtained, a member may then appeal to the independent Public Review Board. (See Affidavit of David Y. Klein.)

The above procedure was specifically recognized as a fair and reasonable means of handling union members' complaints in *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919 (7th Cir. 1974). There the Seventh Circuit concluded that:

[w]here ... there is no question as to the adequacy and mandatory nature of the intra-union remedies it is well settled that an exhaustion of the remedies is an indispensable prerequisite to the institution of a civil action against the union.

495 F.2d at 927. Accordingly, the Court will first consider the exhaustion defense with respect to the defendant Union.

█ Plaintiff initially asserts that the Union cannot raise the exhaustion defense and is estopped from doing so. Plaintiff contends that he contacted various union officials, both Local and International, after the withdrawal of his grievance and was told that there was nothing they could do. Thus, it is argued by plaintiff that he was kept in the dark concerning what his intra-union appellate options were.

Nevertheless, a review by the Court of the record before it belies such a contention. Similar misstatements were involved in *Newgent*, but the court rejected Newgent's estoppel argument. By joining the UAW, [plaintiff] became obligated to exhaust union remedies, and '[n]ecessarily implied in this obligation is the duty to become aware of the nature and availa-

bility of union remedies.' *Id.* at 928 (footnote omitted). *Baldini v. Local 1095*, 581 F.2d 145, 148 (7th Cir. 1978). Moreover, plaintiff does not deny that he received the UAW magazine, *Solidarity*, which clearly outlines appeal rights and procedures. (See Affidavit of Jerry Dale.) Instead, plaintiff states that when he received the publication, he threw it away as junk mail. (See Affidavit of Charles P. Miller.)

Plaintiff next contends that an intra-union appeal would have been futile in this case because bargaining committee chairman George Mapes withdrew plaintiff's grievance initially, and allegedly told plaintiff he would do so again if the grievance was reinstated. Although the Union admits that Mapes had the authority to act in such a manner, this Court finds no basis for circumvention of the exhaustion requirement. Such a conclusion is consistent with the Seventh Circuit's viewpoint in *Baldini*, wherein it was stated:

> As the Local Union officials' misrepresentations could be, in conjunction with the fact of failure to press the grievance, the very subject of relief in the internal procedures, their utterances can hardly rise to an excuse for not utilizing the procedures.

581 F.2d at 148.

Finally, plaintiff urges that the internal union appeal procedures were inadequate because they could not afford him a complete remedy. Plaintiff submits that under the letter agreement between GM and the Union which provides for the reinstatement of a grievance, plaintiff would be deprived of his claim against GM for back pay from the time of the withdrawal of the grievance until the time of its reinstatement. (See Affidavit of Robert Appel and attached Exhibit 2.) However, plaintiff is mistaken when he argues that the above loss could not be compensated by the Union because it concerns lost wages, and those damages are "attributable solely to the employer's breach of contract." *Vaca v. Sipes*, 386 U.S. 171, 197, 87 S.Ct. 903, 920, 17 L.Ed.2d 842 (1967).

"Either the International Executive Board or the Public Review Board may award a member damages incurred as a result of union misconduct." *Baldini, supra* at 149. Thus, it is clear that the Union could be held responsible for any loss sustained by plaintiff as a result of the Union's wrongful conduct in withdrawing a proper grievance. Equally clear is the fact that plaintiff should look to the union for damages resulting from the time period mentioned hereinabove. Said damages would not be attributable to the employer's breach of contract. If plaintiff was not compensated sufficiently by the union, and he "can make a proper showing for any other relief from the union that its procedures did not yield, he can return to court to obtain it." *Id.* at 149. The basis for such a requirement is that "a court should know just what the union did or did not do with respect to the complaint before trying to decide if fair representation really was denied and what relief could be just in the circumstances." *Id.* at 149.

The Court now turns to the claim of GM that it is entitled to summary judgment because of the failure of plaintiff to exhaust his internal union remedies. Although plaintiff disputes the ability of GM to raise such a defense, this Court is not persuaded that exhaustion of intra-union remedies is never a legitimate concern of the employer. *Harrison v. Chrysler Corp.*, 558 F.2d 1273, 1278 (7th Cir. 1977). As *Harrison* established, an employer can raise the exhaustion defense when the following circumstances are present: (1) an intra-union appeal could result in reversal of the union's refusal to press the grievance; (2) the grievance could be reinstated; and (3) resort to the intra-union appellate procedures would not be futile. Thus, the question remains as to whether the exhaustion defense is available to GM in this case.

As stated previously, the Seventh Circuit has continuously held that the U.A.W. appeals procedures are an adequate and fair means of redressing wrongs committed by a union against one of its mem-

bers. *See Baldini v. Local 1095*, 581 F.2d 145, 149 (7th Cir. 1978); *Newgent v. Modine Manufacturing Co.*, 495 F.2d 919, 927 (7th Cir. 1974). Each step of the appellate ladder presents the opportunity for a reversal of the local union representative's adverse determination. (See Defendant GM's Exhibit 1, Section 33 of the UAW Constitution.) If satisfaction is not obtained, a final appeal may be taken to the independent Public Review Board. *Baldini, supra* at 149. It is plainly evident, therefore, that an intra-union appeal by plaintiff could have resulted in a reversal of representative Mapes' decision not to pursue his grievance.

Similarly, the opportunity for a reinstatement of plaintiff's grievance also existed. This fact is admitted by plaintiff's counsel and is also evident from the letter agreement between GM and the UAW. (See Defendant GM's Exhibit 2.) Said agreement provides that if it is determined that the disposition of a grievance is improperly effected, "such grievance is reinstated in the grievance procedure at the step at which the original disposition of the grievance occurred."

The third element necessary to GM's assertion of nonexhaustion as a defense is a showing that the intra-union appellate procedures are not futile. Plaintiff claims futility based upon the letter agreement just mentioned. Plaintiff points to the fact that even if his grievance was reinstated, the starting point for the grievance would be at the original point of disposition. Because Mapes allegedly declared that he would again withdraw plaintiff's grievance, plaintiff argues that the whole process was futile.

In response to this argument, the Court must reiterate its earlier stated opinion that such a statement by Mapes, if true, does not constitute an excuse for plaintiff to sidestep his union remedies. *Id.* at 149. Nor does the Court find it reasonable to believe that Mapes would defy an appellate union reversal of his earlier decision. Such a claim is pure speculation. However, if indeed Mapes had acted in such a manner, plaintiff's claim of futility would have withstood

judicial scrutiny. Unlike the case at bar, the appellate process would have been exhausted and the grievance procedure effectively stalled. In the present situation, however, all parties must speculate as to what *might* have occurred. Plaintiff did not pursue his intra-union remedies. The result being that plaintiff's claim of futility with respect to the actions of representative Mapes is without basis.

Plaintiff's second and final assertion of futility concerns the issue of back pay. Plaintiff contends that pursuant to the letter agreement which provides for the reinstatement of a grievance, *all* claims for monetary damages must be waived prior to reinstatement. Based upon this interpretation, plaintiff asserts that his substantial claims for back pay would be jeopardized, and that the process of reinstatement renders an intra-union appeal futile.

Notwithstanding such an assertion, the Court declines to construe the agreement so broadly. The exact portion of the letter agreement in dispute reads as follows:

> It is agreed, however, that the Corporation will not be liable for any claims for damages, including back pay claims, arising out of the [reinstated] grievance that are already barred under the provisions of the aforementioned National Agreement ... or that relate to the period between the time of the original disposition and the time of the reinstatement as provided herein. It is further agreed that the reinstatement of any such grievance shall be conditioned upon the prior agreement of the Union and the employe or employes involved that none of them will thereafter pursue *such* claims for damages against the Corporation in the grievance procedure, or in any court or before any Federal, state, or municipal agency. (Defendant GM's Exhibit 2.) (Emphasis supplied.)

A careful reading of the above evidences that GM is protected from only two types of claims for damages: (1) claims that are already barred by the National Agreement; and (2) claims that relate to the period of time between the time of the original dispo-

sition and the time of reinstatement. The Court holds that neither of the two limitations adversely affects plaintiff's rights against his employer.

The first of these limitations does nothing more than uphold the provisions of the National Agreement between GM and the Union. Plaintiff parts with no rights that were there to begin with. The second of the limitations only seeks to conform to the guidelines of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). There the Supreme Court observed:

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any of those damages caused by the union's refusal to process the grievance should not be charged to the employer.

386 U.S. at 197–98, 87 S.Ct. at 920–921.

In the instant case, no claim can be made that GM caused the delay from the time of the withdrawal of the grievance to the time of its possible reinstatement. Any damages during this time period are not attributable to the employer. Plaintiff still retains his remaining claims for back pay against GM, however, plaintiff must seek relief against the Union for those damages resulting from the Union's refusal to process the grievance. If plaintiff is not satisfied with the relief obtained from the Union, he may then return to court, but only *after* he first exhausts his intra-union remedies. *Baldini v. Local 1095*, 581 F.2d at 149.

With regard to any remaining claims against his employer, plaintiff is not prejudiced by his obligation under the collective bargaining agreement to resort to intra-union appellate procedures. Through this process, fair representation may be regained and the grievance procedure revived. *Id.* at 149. The employee would no longer have a cause of action for breach of the duty of fair representation against the union, and consequently, an essential element of plaintiff's cause of action against the employer would no longer exist. *Id.* at 150.

In accordance with the reasoning expressed above, the Court finds no waiver of plaintiff's claims by requiring him to first seek relief through the union appellate process. Instead of finding a "futile" procedure, this Court asserts that the grievance process is a more than adequate means of protecting the rights of all the parties involved. These conclusions are consistent with the national labor policy in favor of private dispute resolution. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).

Based upon the foregoing discussion, the Court concludes that there are no genuine issues as to any material facts and that all defendants are entitled to summary judgment as a matter of law. The record firmly establishes that plaintiff has failed to exhaust his intra-union remedies. In addition, no showing has been made that the internal union process is either inadequate or futile with respect to the relief requested by plaintiff. Therefore, defendants' motions for summary judgment are hereby GRANTED and a judgment in behalf of each defendant will be entered accordingly.