Virginia B. HOGAN, Patt G. Abercrombie, Joyce F. Bailey, Calvin S. Barksdale, Darlene S. Bell, Virginia R. Branstetter, Gail B. Candis, Larry E. Covington, Betty P. Doss, Tommy L. Firebaugh, Jeanne F. Hall, Brenda M. Horne, Jill W. Hurt, Frank A. Lang, Robert L. Mack, William W. Manning, Hazel F. Maultsby, Shirley H. Minter, John P. Pinkard, Judith B. Pinkard, Lois M. Radcliff, Larry A. Rowe, C. Marshall Smith, III, Wallace E. Sutphin, Rufus H. Waggoner, III, Nancy G. Wells, Paul F. Willard, Belle S. Wyatt, Diane B. Babb, Mary T. Black, Ruby C. Whorley, Walter G. Bandy, Betty D. Sublett, Sherry M. Griffith, Joyce B. Whatson, Elaine F. Parks, Ramona J. Ellis, Sara C. German, Michael R. Hopkins, Margie P. Stinnett, and Jessie T. Swiercinski, Plaintiffs,

v.

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES; Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Con-Rail System Board of Adjustment No. 86; Brotherhood of Railway Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, MacArthur Lodge No. 1090; and, Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, Cavalier Lodge No. 537, Defendants.

Civ. A. No. 83–0437–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 11, 1986.

Raymond J. La Jeunesse, Jr., Springfield, Va., for plaintiffs.

Joseph Guerrieri, Jr., Washington, D.C., Gary E. Tegenkamp, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

### STATEMENT OF THE CASE

This case was filed by forty-three (43) employees [1] of the Norfolk and Western Railway Company (N & W) and its parent corporation Norfolk Southern, against their Union, the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC).[2] The court has jurisdiction in this case because it is an action arising under the Constitution and laws of the United States and under the Act of Congress which regulates commerce. 28 U.S.C. §§ 1331 and 1337. The court has directed that this case proceed as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs were permitted to maintain the class action on behalf of two classes:

(a) a class comprised of all current employees of the Norfolk and Western Railway ("N & W") and/or the Norfolk Southern Corporation ("Norfolk Southern") represented by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees ("BRAC"), or in "official or fully excepted" positions with Norfolk Southern in which they are required to maintain BRAC membership in order to continue their seniority, and all employees who in the future enter the crafts or classes of N & W and Norfolk Southern employees represented by BRAC or are promoted therefrom to "official or fully excepted" positions with Norfolk and Southern; and,

(b) a second class comprised of all current or former employees of N & W and/or Norfolk Southern disciplined or threatened with discipline by BRAC MacArthur Lodge No. 1090 or Cavalier Lodge No. 537 for crossing Picket lines and/or performing work for N & W or Norfolk Southern during a strike by the Brotherhood of Locomotive Engineers ("BLE") in September 1982 who would have resigned from full BRAC membership before engaging in such conduct if BRAC had informed them that full membership was not a condition of their continued employment.

The case is presently before the court on motions for summary judgment made by both plaintiffs and defendants. In their complaint, plaintiffs alleged that the defendants had breached their duty of fair representation when they did not specifically inform the plaintiffs of the option of being agency fee payers, but instead led the plaintiffs to believe that they had to be formal members of BRAC as a condition of their employment.[3]

1. Two of the original plaintiffs have been dismissed from the suit. Frances S. Young was dismissed by an Order of this court dated August 9, 1984. Joseph T. Fagan was likewise dismissed from this suit on April 18, 1985.

2. Also named as defendants are BRAC's Con Rail System Board of Adjustment No. 86, BRAC's MacArthur's Lodge No. 1090, and BRAC's Cavalier Lodge No. 537.

3. The Union Shop Agreement between BRAC and N & W required all employees to be members of BRAC.

ADDENDUM NO. 4
UNION SHOP AGREEMENT
Section 1.
In accordance with and subject to the terms and conditions hereinafter set forth, all employes of the Carrier now or hereafter subject to the rules and working conditions agreements between the parties hereto, except as hereinafter provided, shall as a condition of their continued employment subject to such agreements, become members of the organization party to this agreement representing their craft or class within sixty calendar days of the date they first perform compensated service as such employes after the effective date of this agreement, and thereafter shall maintain membership in such organization; except that such membership shall not be required of any individual until he has performed compensated service on thirty days within a period of twelve consecutive calendar months. Nothing in this agreement shall alter, enlarge or otherwise change the coverage of the present or future rules and working conditions agreements.

However, the employees could meet this requirement by becoming agency fee payors, persons who paid the membership dues and initi-

The differences between the named plaintiffs and BRAC arose as a result of a strike against N & W by the Brotherhood of Locomotive Engineers (BLE) in September, 1982. BRAC had honored the strike. On or about September 20, 21 and 22, 1982, forty (40) of the named plaintiffs [4] crossed the picket lines which BLE had set up or did work for N & W during the strike. On February 15, 1983, BRAC charged thirty-eight (38) of the named plaintiffs [5] with violating a provision of the Constitution of the Grand Lodge and a resolution of the 1979 Grand Lodge Convention. On February 24, 1982, after notice was given to all those charged, a hearing Committee of Local Lodge 1090 conducted a meeting regarding the charges. None of the named plaintiffs attended the meeting.[6] The Committee found the plaintiffs guilty of contempt and recommended a $100.00 fine against each and loss of all lodge benefits and privileges for one year from date of reprimand. (*See* complaint, paragraph 28). On March 10, 1983, fourteen (14) days after the hearing date, several of the plaintiffs sent a letter to Clifton Clark, President of Lodge 1090 of BRAC, asking that BRAC stop taking disciplinary action against them.[7] On March 30, 1983, Lodge 1090's recording secretary sent letters to those charged and informed them of the Committee's recommendation. The letter also informed those involved that they had four-

---

ation fees of BRAC without being formal members of the union.

MEMORANDUM AGREEMENT

Any employe of the Norfolk and Western Railway Company who, on the date on which compliance with the Union Shop Agreement is required, is not a member of the union representing his craft or class, or any new employe entering the service of the Norfolk and Western Railway Company after the effective date of this agreement, if he would otherwise be required to be a member of a union under the Union Shop Agreement, will be deemed to have met the requirements of the Union Shop Agreement provided he pays to the union representing his craft or class the periodic dues, initiation fees and assessments (not including fines and penalties) uniformly required of all members of such union within the time limits provided for in the Union Shop Agreement.

This Memorandum Agreement shall be attached to and made a part of the Union Shop Agreement.

Agreements such as this have met the approval of the United States Supreme Court. *See National Labor Relations Board v. General Motors Corporation*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

**4.** Betty D. Sublett was the plaintiff who did not cross the picket line nor do work for N & W during the strike according to plaintiffs' complaint.

**5.** The three named plaintiffs who were not charged are Jeanne F. Hall, C. Marshall Smith, III, and Ramona J. Ellis. There were other members of BRAC who were also charged with the violation, but are not parties to this action.

**6.** Mitchell M. Kraus, General Counsel of BRAC said:

Pursuant to the requirements of Article 10, each of the plaintiffs was charged with violating the BRAC Constitution and policy of BRAC as a result of their crossing the picket lines established by members of the BLE strike. All plaintiffs were sent via Certified Mail a copy of the charge, a letter informing them of the identity and composition of the Internal Union Trial Committee, and the time and place of their trial. None of the plaintiffs herein attended their trial, apparently upon advice of the National Right to Work Legal Defense Foundation.

Affidavit of Mitchell M. Kraus, paragraph 10.

**7.** The following is a copy of the letter (Appendix D to the complaint).

March 10, 1983
Mr. Clifton Clark, President
MacArthur Lodge 1090
BRAC
24 Wells Avenue, N.E.
Roanoke, Virginia 24016
Dear Mr. Clark:

This is in reference to Mr. J.E. Hatcher's letter, no date, and Mr. Larry G. Duncan's letter of February 15, 1983, copies attached, regarding a Hearing which was held February 24 to give testimony and present witnesses in defense of the charge of failure to honor the BLE strike of September, 1982.

We the undersigned were never made aware, either before the strike or when we were initially approached to join the union, that it was not compulsory to become a full union member; therefore, because of this, we feel we joined under duress and misrepresentation and feel it is unlawful for any disciplinary action to be taken against us.

We are in the process of seeking legal counsel from the National Right to Work Legal Defense Foundation, Inc.

Very truly yours,

teen (14) days to appeal the decision to Lodge 1090. (*See* Appendix E to the complaint.) After this letter was sent, many of the plaintiffs wrote a letter to D.A. Bobo, International Secretary-Treasurer of BRAC. (*See,* complaint, paragraph 29.) These letters demanded that BRAC stop treating the plaintiffs as formal members. (*See,* Appendix F to complaint.) At a meeting of local Lodge 1090, the recommendation of the Trial Committee of fines and sanctions against forty-three (43) members and reprimands of ten (10) other employees, including plaintiffs, was formally adopted by the lodge. (*See,* complaint, paragraph 30.) On April 26, 1983, the recording secretary of Lodge 1090 sent letters to those affected by the lodge action. The letter informed those concerned about the lodge action and the appeal process to the International President of BRAC. This had to be done in twenty (20) days according to Article 10, Section 5, of the Grand Lodge Constitution. (*See,* Appendix G of the complaint.) At no time did the plaintiffs appear at the hearing or meeting nor did they try to utilize the internal appeals process of BRAC. (*See,* Affidavit of Mitchell M. Kraus, paragraphs 10–12.) Plaintiffs then filed this suit in which they ask for declaratory and injunctive relief. In a nutshell, the relief which they ask for is that the court declare the plaintiffs and class members are not members of BRAC, and that BRAC must inform all of its members, both present and future, of the "agency fee payer" option, in addition to formal membership in BRAC. The plaintiffs also want the disciplinary action to be declared void. (*See,* complaint, and amended and supplemental complaint.)

### DISCUSSION OF THE LAW

In their briefs filed in support of their motions for summary judgment, plaintiffs and defendants raise several issues. However, the court feels that it needs only to discuss two of the arguments. The first is the statute of limitations and the second is

plaintiffs' failure to utilize BRAC's internal appeals process.

■ In a case dealing with what statute of limitations applies in a hybird case [8] involving the breach of a duty of fair representation, the United States Supreme Court held that the six month statute of limitations in the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b) applies. *Delcostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiffs argue that the six months statute of limitations does not apply in this case for several reasons. Their first argument is that this suit is brought under the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.,* while *Delcostello,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), was decided under the NLRA. While the Fourth Circuit Court of Appeals has been silent on this issue, other Circuit Courts of Appeals have not. The First, Second, Third, Eighth, Tenth and Eleventh Circuits have all held that the six month statute of limitations of *Delcostello, id.,* applies to the RLA. *Linder v. Berge,* 739 F.2d 686, 689 (1st Cir. 1984); *Barnett v. United Air Lines, Inc.,* 738 F.2d 358, 363–64 (10th Cir.1984); *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 240 (2nd Cir.1984); *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1192 (3rd Cir.1984); *Hunt v. Missouri Pac. R.R.,* 729 F.2d 578 (8th Cir.1984). This court agrees with these Circuit Courts of Appeals and holds that the six month statute of limitations also applies to the R.L.A.

■ Plaintiffs also argue that this is an action solely against a union and that it is not a hybrid breach of fair representation/contract while *Delcostello,* 462 U.S. 151, 103 S.Ct. 2281, was a suit against both the employer and the union. While this is true, the use of the six months statute of limitation would be more appropriate in this suit than in *Delcostello.* It is the element of the breach of the duty of fair representation which invokes the limitation

---

**8.** A hybrid case in a labor context is one in which the employee sues both the union and the employer.

period of the NLRA. The U.S. Supreme Court, in *Delcostello*, said that the fair representation claim was like an unfair labor practice in the right asserted and the considerations involved. If this was a breach of a collective bargaining agreement, then it would be governed by a state statute of limitations for a contract suit. This is the reasoning which the Eleventh Circuit used to hold that *Delcostello* applies in situations where union members sue only their union and not their employer. *Erkins v. United Steelworkers of America*, 723 F.2d 837 (11th Cir.1984). This court feels that this analysis is sound.

■■■ Plaintiffs also argue that since the complaint in this case was filed before the U.S. Supreme Court's decision in *Delcostello* [9] that the six months statute of limitations should not be given retroactivity. The Fourth Circuit Court of Appeal's decisions in this area are split. When *Delcostello*, 462 U.S. 151, 103 S.Ct. 2281, was remanded to the Fourth Circuit by the U.S. Supreme Court, the Fourth Circuit remanded the case back to the Federal District Court, 716 F.2d 247 (4th Cir.1983). The District Court then granted summary judgment motions for the defendants. 588 F.Supp. 902 (D.Md.1984). The plaintiff appealed. With the case before it for the third time, the Fourth Circuit Court of Appeals harmonized its previous split decisions.[10] *Delcostello v. Local 557, International Brotherhood of Teamsters*, 762 F.2d 1219, 1221, 1222, n. 3 (4th Cir.1985) (hereinafter, *Delcostello II* ). The Fourth Circuit indicated that where there is clear past precedent of a limitation period at the time that a suit is filed, then the precedent will govern the action. The Fourth Circuit has given clear past precedent regarding this matter. In *Howard v. Aluminium Workers International Union and Local 400*, 589 F.2d 771, 773, 774 (4th Cir.1978), the Fourth Circuit said:

Analysis seems to support the view that when a claim against the union is not entangled with a contract claim against the employer, the action sounds more in tort than in contract.

.        .        .        .        .

The appropriate limitations period is taken from Virginia's limitations applicable to tort actions.

With this guidance, the court holds that any suit of this nature filed after *Delcostello* was decided is subject to the six (6) month statute of limitations of the NLRA, and that any case of the same nature filed in Virginia prior to the *Delcostello* decision is subject to the two (2) year Virginia statute of limitations for a tort action. Code of Virginia § 8.01–243. Therefore, this case is subject to the two (2) year statute of limitation.

■■■ The next question which the court must face is when did the statute of limitation start to run? The crux of plaintiffs' case is that BRAC did not specifically inform them of the "agency fee payer" status which was available to them. The statute of limitations begins to run when the cause of action accrues. The time of accrual is that point in time when the plaintiff knows or should have known by the exercise of due diligence the nature of his claim. *Blanck v. McKeen*, 707 F.2d 817 (4th Cir.1983). The most recent of the named plaintiffs who joined BRAC did so in 1976. The named plaintiff who has belonged to BRAC the longest joined in 1943. (See plaintiffs' answers to interrogatories.) The information regarding the status of agency fee payer was disseminated and the named plaintiffs should have known about it.

There are references about non-member agency fee payers in the BRAC Constitution:

**9.** The complaint in this case was filed on May 19, 1983. The U.S. Supreme Court handed down the *Delcostello* decision on June 8, 1983.

**10.** *See, Murray v. Branch Motor Express Co.,* 723 F.2d 1146 (4th Cir.1983) which applies *Delcostello,* retroactively; and *Zemonick v. Consolidation Coal Company,* 762 F.2d 381 (4th Cir.1985) which does not apply *Delcostello* retroactively.

## ARTICLE 28

## REDUCTION IN DUES AND AGENCY FEES TO MEMBERS AND NON-MEMBERS WHO OBJECT TO THE USE OF THEIR UNION DUES OR AGENCY FEES FOR POLITICAL PURPOSES

Section 1. Any full dues paying member or *non-member who pays dues or agency fees pursuant to a collective bargaining agreement* shall have the right to object to the expenditure of a portion of his dues or agency fees for political purposes. (emphasis added)

Art. 6, § 1(a) of BRAC's statutes for the Government of Lodges, which sets forth the procedure for suspending members who fail to meet their financial obligations to BRAC, specifically refers to agency fee payers:

Any individual paying an agency fee will be treated in the same manner as above set forth.

*See,* Kraus Affidavit, Attachment B.

■ A member of a union is under a contractual obligation to be familiar with the union's constitution. *Newgent v. Modine Mfg.,* 495 F.2d 919 (7th Cir.1974). *Fristoe v. Reynolds Metals,* 615 F.2d 1209 (9th Cir.1980).[11] *Amalgamated Clothing Workers v. Kiser,* 174 Va. 229, 6 S.E.2d 562 (1939) states that a person joining a fraternal benefit organization is charged with acquainting himself with its Constitution and bylaws. When they joined BRAC, the named plaintiffs were charged with this duty. The Constitution of BRAC is readily available. The named plaintiffs should have been able to obtain a copy of BRAC's Constitution if not from BRAC, then from the U.S. Government. As the court in *Newgent,* 495 F.2d 919, pointed out, Union Constitutions are public documents which are obtainable from the United States Department of Labor.

■ The information regarding agency fee payers was also published in *Railway Clerk Interchange,* BRAC's magazine. In November, 1975, the magazine discussed the issue of agency fee members specifically.[12] Also, each May in the *Railway Clerk Interchange,* there appears a yearly report of the BRAC Board of Trustees. In this report, reference is made to members and agency fee payers. (*See* Affidavit of Mitchell Kraus.) All of the named plaintiffs admit to receiving the magazine.

In addition to the above sources, reference to agency Fee Payers was in the collective bargaining agreement between BRAC and N & W. Each BRAC member receives a copy of the agreement when he enters employment with N & W. By contract, N & W distributes the bargaining agreement. (*See* Affidavit of Mitchell Kraus.)

If one looks back two years, the limitation period, from the filing date of this suit, from May 19, 1983 to May 19, 1981, there was a period of almost five (5) years since one of the named plaintiffs had last joined BRAC.[13] There has been ample time and opportunity for the named plaintiffs to have learned of the status of agency fee payer. It is clear to the court that this suit is time barred.

■ Even if this case was not time barred, plaintiffs still have not exhausted their internal union appellate process. Union members are required to avail them-

---

**11.** While the duty of fair representation claim sounds in tort, *Howard v. Aluminium Workers Internation Union,* 589 F.2d 771 (4th Cir.1978), the relationship between the union and its members is contractual. The union's Constitution and bylaws constitute the contract between the union and its members. *See, International Association of Machinists v. Gonzales,* 356 U.S. 617, 618–19, 78 S.Ct. 923, 924, 2 L.Ed.2d 1018 (1958). This has been a well settled principle of Virginia law. *Amalgamated Clothing Workers v. Kiser,* 174 Va. 229, 6 S.E.2d 562 (1939).

**12.** The only named plaintiff who would not have received the November, 1975 issue of the *Railway Clerk Interchange* is Lois Radcliffe who did not join BRAC until 1976. However, she would have received the latter issues of the magazine which contained the yearly report of the Trustees of BRAC.

**13.** *See,* id.

selves of internal union appellate procedures. *Miller v. General Motors Corp.*, 675 F.2d 146 (7th Cir.1982); *Newgent v. Modine Manufacturing*, 495 F.2d 919 (7th Cir.1974); *Fristoe v. Reynolds Metals*, 615 F.2d 1209 (9th Cir.1980). BRAC's Constitution, Art. 5 § 2(c) says that no member may resort to any court:

> for the purpose of securing an opinion or decision in connection with any alleged grievance or wrong arising within the organization or under its law, until such officer, member or subordinate unit first shall have exhausted all remedies by appeal or otherwise provided herein, not inconsistent with the applicable law, for the settlement and disposition of such alleged rights, grievances or wrongs.

The United States Supreme Court states that the exhaustion of internal Union remedies is excused if the procedures would have been futile. *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). Plaintiffs do allege futility. But, there is no proof that the process would have been futile. The other members of BRAC who were charged and did go to the hearings were only reprimanded or found not guilty. The plaintiffs did not even try to defend themselves. The named plaintiffs were given notice of the meeting of the trial committee on February 24, 1983. But, they did not attend the hearing. They were notified of their right to appeal to the Lodge. They did not appeal. The named plaintiffs were also informed of their right to appeal to the International President of BRAC after the Lodge adopted the recommendations of the committee. They did not do so. (*See*, Complaint.) There was no effort on the part of the named plaintiffs to utilize the Union's appellate process. They resigned from BRAC after the disciplinary process was already underway. However, they would still be liable for any action they did which was in violation of BRAC's Constitution and bylaws while they were members. As mentioned previously in this opinion, the relationship between the members of BRAC and BRAC is contractual in nature.

As the court stated in *Newgent v. Modine Mfg.*, 495 F.2d 919 (7th Cir.1974):

> By becoming a member of the union, Newgent was contractually obligated to exhaust union remedies before resorting to court action. Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. (Citation and footnotes omitted.)

The statute of limitations has run in this case, and named plaintiffs failed to exhaust their internal union remedies. Since the named plaintiffs are not able to represent this class, the class action is dismissed. Defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is, therefore, denied.

The clerk is directed to send certified copies of this opinion to all counsel of record.