675 F.2d 146
 110 L.R.R.M. (BNA) 2281, 93 Lab.Cas. P 13,418
 Charles P. MILLER, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, International Union, United
Automobile, Aerospace and Agricultural Implement Workers of
America, and Local No. 499, United Automobile, Aerospace and
Agricultural Implement Workers of America, Defendants-Appellees.
 No. 81-1812.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 9, 1981.
Decided April 9, 1982.
 
 1
 Gregory A. Purvis, Indianapolis, Ind., for plaintiff-appellant.
 
 
 2
 Herbert C. Snyder, Jr., Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., M. Jay Whitman, UAW Legal Dept., Detroit, Mich., for defendants-appellees.
 
 
 3
 Before BAUER and WOOD, Circuit Judges, and EVANS, District Judge.*
 
 
 4
 TERENCE T. EVANS, District Judge.
 
 
 5
 A Letter Agreement negotiated by appellees United Auto Workers (UAW) and General Motors (GM) in 1976 provided for the reinstatement of employee grievances if one of the union's internal appellate tribunals determined that the grievance had been improperly disposed of by union officials. A proviso of that agreement shielded GM from back pay liability for the period of time between the initially improper disposition of the grievance and its later reinstatement. The issue before us is whether, given this reinstatement provision, an employee must exhaust internal union appeal procedures as a condition to bringing suit against his union and employer under § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). The district court, 513 F.Supp. 748, granted summary judgment in favor of the appellees on the ground that exhaustion was required. We affirm.
 
 
 6
 Appellant Charles P. Miller was terminated by GM in September of 1978 for failing to report for work within three days after the expiration of a sick leave. On October 2, Miller filed a grievance with his local union protesting his discharge and seeking reinstatement and back pay. After investigation and efforts to compromise the grievance, George R. Mapes, Chairman of the local's Shop Committee, withdrew Miller's grievance because, in his opinion, it lacked merit and could not be won. According to Miller, whose version of the facts must be accepted as true, Mapes informed him that he could appeal the withdrawal using internal union appeal procedures, and could succeed in having the grievance reinstated, but that if reinstatement of the grievance occurred, Mapes would again withdraw it. Miller then contacted two higher-ranking union officials who corroborated Mapes' authority to do as he had said. Miller did not attempt to initiate any internal appeals, and on June 13, 1979 commenced this action under § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), alleging that the appellee unions breached their duty of fair representation by failing properly to process his grievance, and that GM breached the collective bargaining agreement by unlawfully terminating him. His complaint prayed for reinstatement and back pay.
 
 
 7
 In considering the defendants' motions for summary judgment, the district court addressed separately the exhaustion requirement with respect to the unions and GM. The district court concluded that exhaustion was required with respect to the unions because the internal appeal process was fair and reasonable, the unions were not estopped from requiring exhaustion because of Mapes' representations, and Miller could look to the unions for damages resulting from their unlawful conduct. GM was awarded summary judgment in principal reliance on Harrison v. Chrysler Corp., 558 F.2d 1273 (7th Cir. 1977), the district court concluding that the intra-union appeal process could result in a reversal of the union's refusal to press the grievance, the grievance could be reinstated, and resort to internal appeal procedure would not be futile.
 
 
 8
 Subsequent to the district court's determination, the Supreme Court decided Clayton v. Int'l Union, UAW, et al., 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), in which it held that an employee must exhaust internal union appeals procedures as a precondition to a § 301(a) suit "(w)here internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance...." 451 U.S. at 692, 101 S.Ct. at 2097. Recently we held that Clayton required exhaustion in a situation where an employee sought only monetary damages which were recoverable through the internal union appeals procedure. Tinsley v. U.P.S., et al., 665 F.2d 778 (7th Cir. 1981). Miller argues that Clayton does not require exhaustion in this case because, even though the Letter Agreement provides for the reactivation of employee grievances, the provision limiting GM's back pay liability prevents an employee from receiving as full a back pay recovery as might otherwise be available in a § 301(a) suit.[1]
 
 
 9
 The court in Clayton determined that an exhaustion requirement must be analyzed in terms of the national labor policy encouraging private, as opposed to judicial, resolution of disputes over collective bargaining agreements. That policy "complements the union's status as the exclusive bargaining representative" and "enhance(s) the union's prestige with employees." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Employers also benefit from the policy because it imposes limitations on the employee's choice of remedies. Id. Permitting an employee to sidestep exclusive contract provisions for grievance resolution would " 'exert a disruptive influence upon both the negotiation and administration of collective agreements.' " Id., quoting Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1961). A grievance reactivation provision such as the one involved in this case links the internal union appeals procedure with the collectively bargained grievance resolution mechanism in a way that implicates this important policy:
 
 
 10
 "Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would enhance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum. Thus, if the employee received the full relief he requested through internal procedures, his § 301 action would become moot, and he would not be entitled to a judicial hearing. Similarly, if the employee obtained reactivation of his grievance through internal union procedures, the policies underlying Republic Steel would come into play, and the employee would be required to submit his claim to the collectively-bargained dispute-resolution procedures. In either case, exhaustion of internal remedies could result in final resolution of the employee's contractual grievance through private rather than judicial avenues." Clayton, supra.
 
 
 11
 We believe the policies underlying Republic Steel and reiterated in Clayton are served by requiring exhaustion even if the employee may not be able to obtain the same relief in the reactivated grievance procedure as might have been available in a § 301(a) suit. As long as the intra-union appeals process could result in the reinstatement of a grievance, thus bringing it back within the framework of the collectively negotiated procedure for settling contract disputes, final resolution of the employee's contractual grievance is possible through the preferred private means.
 
 
 12
 Clayton predicated exhaustion upon the internal appeals procedure being able to produce one of two results: either a reactivation of the grievance, or complete relief (as measured by that available under § 301(a)) through the internal appeals procedure itself. Where intra-union appeals procedures cannot reactivate an employee's grievance, measuring the adequacy of the employee's internal remedies by remedies available under § 301(a) is logical: being foreclosed from the contractual dispute resolution procedure, the employee no longer has the opportunity to effect a settlement of the contract grievance through the collectively negotiated process. While it is permissible under the national labor policy to require an employee to utilize contract grievance procedures before seeking judicial relief, purely intra-union mechanisms are not collectively negotiated, and resort to them by an employee does not necessarily contribute to the integrity of the collective bargaining system or the policy favoring the use of contractual grievance resolution mechanisms. See: Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). Thus, in order to justify requiring an employee to exhaust non-collectively negotiated procedures, those procedures must be able to provide "complete relief" as measured by § 301(a) standards. Clayton, supra 451 U.S. at 692, 101 S.Ct. at 2097; Tinsley, supra.
 
 
 13
 The logic requiring "complete relief" compatible with § 301(a) standards does not apply where the grievance can be reinstated through the internal union appeals procedure. The need for complete relief, by § 301(a) standards, is not compelling, and we do not think Clayton requires it, where higher principles favoring collective negotiations and resolution of disputes through negotiated procedures may still be given effect. It is our conclusion that requiring exhaustion of intra-union appeals procedures in the instant case is consistent with Clayton and with national labor policy.
 
 
 14
 The appellant offers two other reasons why exhaustion in this case should not be required. First, he contends that Mapes' representations regarding the likely fate of a reinstated grievance estop the unions from raising Miller's failure to exhaust the appeals procedure. In Newgent v. Modine Mfg. Co., 495 F.2d 919 (7th Cir. 1974), and again in Baldini v. Local Union No. 1095, et al., 581 F.2d 145 (7th Cir. 1978), we considered similar arguments. Newgent had filed a grievance protesting his termination, but after processing it through the initial stages, the union decided not to seek arbitration. Newgent, claiming that he was told by the union president that any effort to utilize the internal appeals procedure would be fruitless, commenced a § 301(a) suit without attempting an intra-union appeal. Responding to his estoppel argument, we stated:
 
 
 15
 "As noted supra, the exhaustion of union remedies is mandatory under the Union's Constitution, and there is no question that the Union remedies are in fact fair and adequate and were freely available to Newgent. By becoming a member of the Union Newgent was contractually obligated to exhaust Union remedies before resorting to a court action. Neal (v. System Board of Adjustment) supra, 348 F.2d (722) at 726. Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. Newgent was not 'justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do.' Donahue v. Acme Markets, Inc., 54 L.C. para. 11, 413 (E.D.Pa.1966)."
 
 
 16
 495 F.2d at 927-928.
 
 
 17
 In Baldini, the plaintiff's grievance was not submitted to arbitration, although union officials told him that it had been. Baldini did not find out that it hadn't been arbitrated until the time for submission to arbitration had expired. Baldini commenced a § 301(a) action without resorting to internal union appeals procedures, claiming that an International Union official told him that nothing more could be done for him. There we said:
 
 
 18
 "... As the Local Union officials' misrepresentations could be, in conjunction with the fact of failure to press the grievance, the very subject of relief in the internal procedures, their utterance can hardly rise to an excuse for not utilizing the procedures."
 
 
 19
 581 F.2d at 148.
 
 
 20
 Under the reasoning of these cases we think it is clear that Miller cannot rely on Mapes' statements or those of other union officials to excuse exhaustion. As in Newgent and Baldini, the UAW Constitution expressly obligates members to exhaust internal appeals procedures prior to commencing suit. Miller, like Newgent and Baldini, had a duty to know his union appeal rights. He had access to copies of Solidarity, the union newsletter, which in a number of issues outlined the internal appeals procedures. Finally, as we noted in Baldini, the representations themselves could have been made a subject of the appeals process.
 
 
 21
 Miller alternatively urges that we reconsider our decisions in Newgent and Baldini as contrary to the general policy of preventing parties from profiting by their own misconduct. Miller argues that as a general principle the unions should not be permitted to misrepresent the substance and likely outcome of an intra-union appeal and then raise as a legal defense the employee's choice not to utilize the intra-union procedure. A union member's duty to become familiar with the internal appeals procedure is implicit in his obligation to exhaust those remedies prior to seeking judicial relief. Newgent, supra at 928; Baldini, supra at 148. Such was Miller's responsibility. He has not argued that he was not provided with a copy of the union's Constitution or that the union publication did not adequately explain his appeal rights. The speculations of union officials, particularly when they are not principals in the appeals process, cannot excuse an employee from an obligation to proceed in accordance with the formal procedures. In the face of such elaborate, detailed and well-documented procedures as those developed by the UAW and set forth in its Constitution, we do not believe any employee's reliance on such representations should be viewed as reasonable. Accordingly, we decline to disturb the holdings in Newgent and Baldini.
 
 
 22
 Finally, Miller argues that exhaustion should be excused because any resort to the procedure would have been futile. The futility is premised upon Mapes' representation that even if Miller were successful in having the grievance reinstated, Mapes would only withdraw it again. The district court dismissed this argument as too speculative, and we concur. This is not a case like Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476, 490 (7th Cir. 1970), in which we observed that there could be circumstances "in which union representatives repeatedly have breached their duty of fair representation in previous dealings with an employee," and where, as a result, compliance with grievance procedures would be futile. In Waters the employee claimed that he had repeatedly requested his union to represent him in matters of employment discrimination to no avail, and that any formal grievance he would have filed in that case would have been channeled through the same officials that had previously refused to assist him.
 
 
 23
 Under those circumstances we held that Waters' failure to use the contractual grievance mechanism did not bar his § 301(a) action. Here the appeals procedure was open and available to Miller, and while Miller may be correct in pointing out that threatened actions might not be a proper subject of an internal appeal, we see nothing in the record before us that would have prevented Miller from requesting, as a part of the internal relief sought, some assurance that the grievance would not again be improperly withdrawn. And, as the district court observed, it strains credulity to believe that a local representative would so lightly regard an appellate reversal of his prior action as to do again the very thing which had been determined improper by higher union authority. In summary, because we believe the Letter Agreement providing for reinstatement of grievances is controlled by Clayton, and further because we do not find merit in either the appellants' estoppel or futility argument, we conclude that summary judgment was properly granted in favor of all defendants and the decision of the district court is affirmed.
 
 
 
 *
 Judge Terence T. Evans, District Judge of the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 There has been some question in this case whether back pay accruing during the period for which GM is not liable under the Letter Agreement may be obtained as a damage award through the internal appeals procedure. The appellant contends that no such remedy is available, or at least that no evidence exists in this record upon which that determination can be made. Because our decision is based upon the grievance reactivation aspect of the Letter Agreement, we need not consider the availability of damages to fill the back pay "gap" created by it