William JARREL, et al., Plaintiffs,

v.

BOMAG, et al., Defendants.

No. C–3–85–882.

United States District Court,
S.D. Ohio, W.D.

May 22, 1989.

James H. Lagos, Springfield, Ohio, for plaintiffs.

Frederick G. Cloppert, Columbus, Ohio, for Intern. Union.

Richard A. Durose, Dayton, Ohio, Ronald L. Mason, Columbus, Ohio, Smith & Schnacke, Dayton, Ohio, for BOMAG (U.S.A.)

DECISION AND ENTRY OVERRULING IN PART AND GRANTING IN PART DEFENDANT BOMAG'S AND DEFENDANT UAW'S MOTION FOR SUMMARY JUDGMENT (DOC. # 10, DOC. # 14); JUDGMENT TO BE ENTERED FOR BOTH DEFENDANTS AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, District Judge.

This case is before the Court on Motions for Summary Judgment by Defendant BO-

MAG and Defendant United Automobile, Aerospace and Agricultural Workers of America (the "UAW" or "Union"). For the reasons set forth below, summary judgment is granted for both Defendants.

Plaintiffs are former employees of BOMAG (U.S.A.), a division of AMCA International Corporation ("BOMAG") at the Springfield, Ohio, plant. As employees of BOMAG, Plaintiffs were members of the UAW and third party beneficiaries of a Collective Bargaining Agreement (the "contract" or "CBA") between BOMAG and the UAW. With the exception of James H. Clark, all the Plaintiffs were laid off sometime during the years 1981 or 1982. Plaintiff Clark was laid off on December 21, 1984 with a group of other BOMAG employees not parties to this suit.

In connection with this latter group of lay offs, the UAW filed a grievance with BOMAG asserting that these former employees were entitled to severance pay under article II, sections 2 and 3 under the CBA which provided:

*Section 2.* The company shall have the right to determine plant location in the event of relocation or expansion of operations covered by this agreement to a location within 50 miles of Springfield, Ohio. The provisions of this contract shall automatically be extended to such plant.

*Section 3.* In the event a complete discontinuance of plant operations or relocation of the plant beyond a radius of 50 miles from the present location, employees who at such time shall have been in the employ of the company for one full and continuous year and who do not choose to accept employment with the company as offered at the new location, shall be entitled to severance pay. The company will allow all eligible employees the opportunity for employment at the new location. These employees who are employed at the new location within 30 days of termination of the Springfield plant will have their length of service at the Springfield plant based on the schedule at the new location.

Federal laws governing pensions will be applicable.

If a new location is within the 50 mile radius an eligible employee may elect to receive severance pay in lieu of lay off or acceptance of an available job at the new location. In the event of relocation or expansion of operations covered by this agreement to a location within Clark County, an eligible employee would not be entitled to receive severance pay in lieu of lay off or acceptance of an available job at the new location.

It is understood that employees will not be laid off in advance of relocation for purposes of voiding the severance pay obligation. Severance pay shall be at the rate of three hours pay for each complete month of continuous service to a maximum of 240 hours pay.

The pay per month will be computed at the rate in effect at the time of closing or moving.

At the time the Union filed the grievance on behalf of the employees laid off in 1984, it did not include the Plaintiffs who were laid off in 1981 and 1982. Citing article II, section 3 of the Collective Bargaining Agreement, BOMAG explained that the reason for this was "the Union and the company were in agreement that the contract language for severance pay did not cover employees who were not on the payroll at the time of the alleged 'complete discontinuance of plant operations' in December, 1984" (see Doc. #21, p. 5).

On March 12, 1985, grievances were filed on behalf of the Plaintiffs (except Clark) by the Union committeeman concerning BOMAG's failure to provide severance pay for their layoffs during 1981 and 1982. These grievances were rejected at a management union meeting held on April 16, 1985. On April 18, BOMAG officials notified the Union committeeman in writing that it was denying the Plaintiffs' grievances for two reasons. First, the company was not in violation of the severance pay provision under the Collective Bargaining Agreement, as there had not been a "complete discontinuance of operations nor relocation of the plant within or beyond a radius of 50

miles from the present location" since 11 employees were still working in the plant at the time Plaintiffs were laid off; and, secondly, the grievances were not timely filed under article V, section 5 of the Collective Bargaining Agreement which provides that an employee's grievance must be filed within one week of the time of the event giving rise to the grievance or within one week after the aggrieved party learns of the occurrence.

Following rejection of the grievance, the Union committeeman attempted to submit the Plaintiffs' grievance to arbitration on May 6, 1985. This request was also denied by BOMAG as untimely since article 4, section 4 of the CBA requires requests for arbitration to be made in writing to the other party, "not more than 15 days after receipt of the other party's final, written answer under step 3" (rejection of the grievance).

The next significant event occurred on July 20, 1985 at which time BOMAG and the UAW entered into a new CBA effective for the years 1985 through 1988. Under the new CBA, Plaintiffs' recall rights were terminated. On July 25, 1985, BOMAG notified each of the Plaintiffs that his name was being removed from the seniority list.

Plaintiffs filed suit in the Clark County Court of Common Pleas on October 29, 1985. This case was removed to the Federal District Court on November 22, 1985.

In their Complaint, Plaintiffs allege what the Court views as two separate claims for relief. Count One alleges that BOMAG breached the CBA by failing to give them severance pay after laying them off. In Count Two, ¶ 11, the Plaintiffs claim that the Union breached its duty of fair representation to them by failing to press their March 12, 1985 grievance (concerning BOMAG's failure to provide severance pay) through to arbitration.[1] In Count Two, ¶ 12, the Plaintiffs claim that the Union breached its duty of fair representation by signing a new CBA with BOMAG which terminated their recall rights.

This Court reads Count One and Count Two, ¶ 11, to assert a hybrid § 301 unfair representation claim against BOMAG and the UAW. A hybrid § 301 claim actually comprises two causes of action: a suit against the employer under § 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185 ("LMRA") for breach or violation of the collective bargaining agreement and a suit against the Union for the Union's breach of its duty of fair representation—a duty judicially implied under § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a) and § 301 of the LMRA. The Court construes Count Two, ¶ 12, to assert an unfair representation claim against the Union only. This Court has jurisdiction over both claims. *See Vaca v. Sipes*, 386 U.S. 171, 183–87, 87 S.Ct. 903, 913–15, 17 L.Ed.2d 842 (1967) (holding that federal jurisdiction is not destroyed because an employee sues the employer for breach of the CBA and the Union for unfair representation in the same claim); and *Storey v. Local 327, International Brotherhood of Teamsters*, 759 F.2d 517, 523 (6th Cir.1985) (holding that a claim for breach of the Union's duty of fair representation is within the jurisdiction of the federal district court, even when there is no accompanying claim under § 301 for breach of contract).

Both Defendants have filed Motions to Dismiss with supporting affidavits. Since the motions have relied upon materials outside the pleadings, the Court considers these motions as Motions for Summary Judgment. *See* Fed.R.Civ.P. 12(b)(6).

Each Defendant claims that for those Plaintiffs laid off in 1981 and 1982, the action is barred by the running of the statute of limitations, and that Plaintiff Clark's hybrid § 301 claim should be dismissed because he failed to exhaust the remedies available to him under the CBA. Only Defendant UAW argues that the Plaintiffs have failed to exhaust their internal Union remedies as to both claims of unfair representation against the Union and that there is no genuine issue of material fact that the

---

1. Plaintiffs have moved to amend their Complaint in order to allege that the Defendants

acted arbitrarily and in bad faith in failing to press their grievance through to arbitration.

Union breached its duty of fair representation. The Court will consider each of these arguments *seriatim.*

1.  THE DEFENDANTS' ARGUMENT THAT FOR THOSE PLAINTIFFS LAID OFF IN 1981 AND 1982, THEIR CLAIMS ARE BARRED BY THE RUNNING OF THE STATUTE OF LIMITATIONS.

Since the Court views Plaintiffs' Complaint as alleging essentially two claims—a hybrid 301/unfair representation claim and an unfair representation claim against the Union only—the statute of limitations period for each of these claims is relevant.

In *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the United States Supreme Court held that a hybrid § 301 unfair representation claim is subject to the six-month statute of limitations applicable to unfair labor practice claims under § 10(b) of the NLRA 29 U.S.C. § 160(b). In this same connection, the Sixth Circuit has adopted the view that § 10(b) is applicable to all unfair representation claims regardless of the nature or presence of a § 301 claim. *See Adkins v. International Union of Elec., Radio & Mach.,* 769 F.2d 330, 335 (6th Cir.1985). Thus, the six-month statute of limitations governs both Plaintiffs' hybrid § 301 claim *and* the non-hybrid unfair representation claim against the Union. Accordingly, since this suit was filed on October 29, 1985, in order for the six-month statute of limitations to bar any of the Plaintiff's claims, Plaintiffs' cause of action as to that claim must have accrued by April 29, 1985, six months before filing, unless some tolling principle otherwise precluded accrual of the cause of action by that date.

A.  *Plaintiffs' Hybrid § 301 Unfair Representation Claims*

■ Time of accrual is the central issue here. The general rule is that a cause of action accrues in an unfair representation claim, whether coupled with a § 301 breach of contract claim against the employer or not, when the employee knew or should have known of the Union's alleged breach of duty of fair representation. *See Dowty v. Pioneer Rural Elec. Coop., Inc.,* 770 F.2d 52, 56 (6th Cir.1985) *cert. den.* 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985) (hybrid § 301 unfair representation claim) and *Erkins v. United Steelworkers of America,* 723 F.2d 837, 839 (11th Cir. 1984) *cert. den.* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984) (action involving only an unfair representation claim).

■ Defendant BOMAG argues that the cause of action on the hybrid § 301 unfair representation claim accrued in 1981 and 1982 for those Plaintiffs laid off during that time period. (*See* Doc. # 10, p. 7). Defendant UAW argues that the cause of action accrued in 1984 for Plaintiffs laid off in 1981 and 1982 since Plaintiffs "knew or should have known of a claim for severance at the time ... Clark and the December, 1984 layoffs filed their grievance." (*See* Doc. # 14, p. 12).

The Court disagrees with Defendant BOMAG that the cause of action accrued in 1981 or 1982. Under the CBA, severance pay was provided only in the event of a complete discontinuance of plant operations or relocation of the plant beyond a radius of 50 miles from the Springfield site. (*See* 1982–1985 CBA, article 2, section 2, Doc. # 10, Exh. A). None of the parties herein argues that the plant closed in 1981 or 1982. Indeed, it is obvious that the plant was open at least until December, 1984, when Plaintiff Clark and 46 other BOMAG employees were laid off. There is no need to grieve something that is non-grievable or not a violation of the CBA. Therefore, the Plaintiffs' hybrid § 301 claim did not and could not have accrued when they were laid off in 1981 or 1982.

Defendant UAW argues that Plaintiffs' hybrid § 301 claim is barred by the statute of limitations, since it accrued in 1984 when Plaintiff Clark and a group of other BOMAG employees (not parties to this suit) were laid off and the Union filed a grievance on their behalf—an event which should have alerted the Plaintiffs that they had a viable grievance for severance pay against BOMAG, their former employer.

Although the Plaintiffs appear to agree that the Union's filing of the grievance on behalf of the 1984 dischargees was the event that brought to their attention that BOMAG was in breach of the CBA severance pay provision, they argue that this information took a while to reach them and that within seven days of learning such, they filed their own grievance with the Union. (*See* Doc. # 19, Affidavit of Plaintiffs).

The Court can reasonably assume that the plant closed or was closing in December, 1984, because at least by this time, the Union was willing to file a grievance for severance pay on behalf of those employees laid off during that time frame. On the other hand, the Court notes that one reason offered by Defendant BOMAG in rejecting the Defendants' grievance filed on March 12, 1985, was that the company was not in violation of the severance pay provision under the contract because the plant had not closed down or relocated 50 miles away from the Springfield site. (*See* Doc. # 9, Exhibit D). This would suggest that as late as April, 1985, the plant was still in operation. Since an arbitration decision was never reached as far as this Court is aware, as to the grievance filed by the Union on behalf of the 1984 layoffs, the Court cannot say for certain when the plant closed and the Court has no way of resolving the conflicting evidence without more specific information from the parties as to when, if ever, the plant did indeed close.

On a federal Rule 56 motion for summary judgment, same cannot be granted if a genuine issue of material fact exists after construing the evidence most strongly in favor of the party against whom the motion is directed. That is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party, the motion for summary judgment must be over-

ruled. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the trial judge's function is not to weigh the evidence and to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510. In essence, the inquiry is whether the evidence presents a sufficient disagreement, a sufficient conflict to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 249–50, 106 S.Ct. at 2510–11.

Construing the evidence in the light most favorable to the non-movants, the Plaintiffs, a genuine issue of material fact exists as to if and when the plant closed. Assuming the plant did close in 1984, it is certainly also a question of fact whether these employees discharged in 1981 and 1982 knew or should have known that their former employer was being closed down and whether they timely filed a grievance for severance pay under the CBA. While it could be argued that the closing of the plant should have spread like wild fire through the present as well as the former employees, the Court believes that there was probably some delay between the alleged closing of the plant and news of same coming to the Plaintiffs' attention. That being the case, the Plaintiffs' cause of action may well be within the six-month statute of limitations period required under *Del Costello* (as having accrued on or after April 29, 1985) because as long as the Plaintiffs' grievances were timely lodged with the Union as required under the CBA, there was no accrual of the § 301 claims against the employer BOMAG, for purposes of the limitations period, *see Adkins v. International Union of Electrical and Machine*, 769 F.2d 330, 336 (6th Cir.1985), and Plaintiffs could rest on the normal grievance procedures to advance their claims.[2]

**2.** Defendant UAW's argument that Plaintiffs are trying to "boot strap" their claim into federal court by filing an untimely grievance is without merit. A grievance is timely filed under the CBA as long as it is filed within seven days of the grievants' learning that they have a grievable claim (*See* Doc. # 10, Exhibit A). The Court

must accept as true Plaintiffs' unrebutted affidavit testimony that this information was not available to the Plaintiffs until seven days within the time that they filed their grievances. The Defendants' argument that the Plaintiffs' grievances contained dates that were crossed off that would appear to put the grievances beyond the

In undisputed affidavit testimony, the Plaintiffs claim they "were not informed by the company or the Union that the grievances that had been filed on March 12, 1985 were disallowed by the company until after the 15–day time period [for requesting arbitration] had expired" (*See* Doc. # 19, Plaintiffs' affidavit). The denial of the grievances occurred on April 16, 1985, at a regularly scheduled Union–Management meeting. The Union committeeman handling the grievances was not notified in writing of this fact until April 18, 1985. Under the CBA, grievants have 15 days after notice of the denial of their grievance (in this case until May 3, 1985) to request arbitration. A letter written by a BOMAG spokesperson on May 7, 1985, indicates that the Union did not request arbitration until May 6, 1985, three days beyond the cut-off date for requesting arbitration. " 'Unexplained Union inaction' which substantially prejudices a member's grievance may be sufficiently arbitrary to constitute unfair representation." *Farmer v. ARA Services*, 660 F.2d 1096, 1103 (6th Cir.1981). Accepting as true the unrebutted affidavit testimony of the Plaintiffs that they did not learn their grievances had been denied until after May 3, 1985, they are not chargeable with the knowledge that the Union breached its duty toward them until that point in time or shortly thereafter—a date six months within the time Plaintiffs first filed suit. Therefore, enough genuine issues of material fact exist regarding the statute of limitations (*i.e.*, whether the plant was closed or was closing when Plaintiffs were laid off; if so, whether Plaintiffs knew or should have known that the plant was closing and whether they timely filed their grievances with the Union spokesperson) that Defendants' Motion for Summary Judgment on grounds that Plaintiffs' cause of action is barred by the statute of limitations must be and is overruled.

B. *The Unfair Representation Claim Against the Union Only*

■ On July 20, 1985, Defendants BOMAG and the UAW entered into a new CBA essentially eliminating the Plaintiffs' recall rights. On July 25, 1985, each of the Plaintiffs received a letter from the company stating that his name had been removed from the seniority list. (*See* Doc. # 19, Affidavit of Clarence S. Shaw). This suit was filed within six months of that time. Therefore, Plaintiffs' unfair representation claim against the Union only is not barred by the statute of limitations and the Motion for Summary Judgment as to this claim on a statute of limitations basis is also overruled.

2. THE DEFENDANT'S ARGUMENT THAT PLAINTIFF CLARK HAS NOT EXHAUSTED THE REMEDIES AVAILABLE TO HIM UNDER THE COLLECTIVE BARGAINING AGREEMENT

■ Plaintiff Clark was laid off on December 21, 1984. On that date, a grievance was filed by the UAW on behalf of Clark and 46 other BOMAG employees laid off at that time. The company apparently rejected the grievance and the matter was pressed through to arbitration on November 19, 1985. (*See* Doc. # 10, Affidavit of Bernie Schubert.) At the time Defendants filed their Motions to Dismiss, a decision on the arbitration matter had not been reached. Further, none of the parties has ever informed the Court whether the arbitration matter has ever been resolved to this date, so the Court must assume the matter is still at the arbitration stage.

■ Under § 301 of the LMRA, an employee is normally required to attempt to exhaust any grievance or arbitration remedies provided for in the CBA *before* filing a suit for relief in court. *Republic Steel v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Only if the Union refuses to press or only perfunctorily presses the employee's claim, is he excused from this exhaustion requirement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

seven-day period of time is evidence that goes in the opinion of this Court, only to the timeliness and credibility of the grievances at trial.

Since Plaintiff Clark's grievance is still, as far as this Court is aware, in arbitration and Clark fails to show any circumstances which would excuse him from exhausting the remedies available to him under the CBA, the Motion for Summary Judgment as to Plaintiff Clark is granted. Judgment is granted in favor of the Defendants and against the Plaintiff Clark.[3]

### 3. THE DEFENDANT UAW'S ARGUMENT THAT PLAINTIFFS FAILED TO EXHAUST THEIR INTERNAL UNION REMEDIES ON EITHER OF THEIR CLAIMS OF BREACH OF THE UNION'S DUTY OF FAIR REPRESENTATION

#### A. *Hybrid § 301 Claim*

■ It is undisputed that the Plaintiffs did not seek an internal Union appeal of the denial of their grievance for severance pay or further yet file any grievance at all on account of the Defendants' renegotiation of the CBA with BOMAG in 1985 which resulted in the termination of Plaintiffs' recall rights.

■ Under *Clayton v. International Union, UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), exhaustion of the internal Union appeals procedure is a required predicate to maintenance of a hybrid § 301 suit in court unless the plaintiff can demonstrate an adequate excuse for failure to exhaust. Failure to exhaust bars suit against both the Union and the employer. 451 U.S. at 692, 101 S.Ct. at 2097; *Monroe v. International Union, UAW*, 723 F.2d 22 (6th Cir.1983), *affirming* 540 F.Supp. 249 (S.D.Ohio 1982).

■ Courts have discretion to decide whether to require exhaustion of internal union procedures. *Clayton v. Automobile Workers*, 451 U.S. at 689, 101 S.Ct. at 2095. Relevant factors bearing on whether the court should require exhaustion include: *First*, whether hostility on part of union officials might make a fair hearing on the claim impossible; *second*, whether the in-

ternal union appeals procedure would be adequate to either reinstate the claimant's grievance or to award him the full relief he seeks under § 301; and *third*, whether exhaustion of internal union procedures would unreasonably delay a judicial hearing on the merits. *Id.* The court may excuse the employer's failure to exhaust if the plaintiff demonstrates that any one of these factors exists. *Id. Monroe v. International Union, UAW*, 723 F.2d 22, 25 (6th Cir.1983).

This Court finds that Plaintiffs have not adequately demonstrated any excuse for failure to exhaust. An internal union appeals mechanism was available to the Plaintiffs under the UAW's constitution, article 33. Affidavit testimony attached in support of Defendant UAW's Motion for Summary Judgment states: "Article 33 of the UAW constitution guarantees members the right at membership meeting to challenge the actions of the Local Union or unit or its officials in a wide range of areas including grievance handling. If the membership rejects this challenge or does not act, the member has the right to appeal to the International Executive Board (IEB) ... If the member is dissatisfied with the decision of the IEB, the decision may be appealed to the Convention Appeals Committee (CAC) or the Public Review Board (PRB)" (*See* Doc. # 14, Exhibit A).

Plaintiffs argue that as rank and file members of the UAW, they were never given copies of the UAW constitution and were never informed of any procedures to follow if they disagreed with any Union action. In contrast, Defendant UAW maintains that information concerning the Union's internal appeals procedure is frequently a subject of *Solidarity*, the newspaper published by the International Union UAW, a copy of which is sent to every dues paying member of the UAW (*See* Doc. # 14, Exhibit C).

The Seventh Circuit faced a similar claim in *Miller v. General Motors Corp.*, 675 F.2d 146 (7th Cir.1982). In that case, the

---

**3.** While Plaintiff could, with leave of Court, amend his Complaint to demonstrate that he *has* exhausted his contractual remedies it would serve no purpose at this point. As demonstrated below, Plaintiff has also failed to exhaust his internal Union remedies.

plaintiff argued that exhaustion was excused because he was told by his local union president that any effort to use his appeal right would be futile. *Id.* at 147–49. The Seventh Circuit rejected the plaintiff's argument and held that the employee had *a duty* to learn his union's appeals procedure. The court remarked:

> In the face of such elaborate detailed and well documented procedures as those developed by the UAW and set forth in its constitution, we do not believe that any employee's reliance on such representations should be viewed as reasonable. Id. at 150.

In following *Miller* in *Monroe v. International Union, UAW*, 723 F.2d 22 (6th Cir.1983), the Sixth Circuit, when confronted with an employee's claim that resort to internal union procedures would be useless stated:

> The *Miller* court imposed a duty to pursue appellate rights even when told at the local level that the appeal would bring no benefit. We impose the lesser obligation to pursue appellate rights even though ignorant that they can result in the full relief as defined in *Clayton. Id.* at 26.

This court interprets the *Miller* and *Monroe* decisions to mean that ignorance on the part of an employee as to an internal union appeals process is not a satisfactory excuse in this circuit for failure to exhaust.

Plaintiffs also argue that an appeal to the Union would have been futile because when they lost their jobs "the local and regional people told them they were out of the Union" and "did not care what happened to them. They had to look after themselves." (*See* Doc. # 19, Affidavit of Plaintiffs). This argument amounts in essence to a hostility claim based on the response Plaintiffs received when they tried to press their grievance through the local and regional factions of the UAW. This type of claim too has never passed muster in the Sixth Circuit. In the *Monroe* case, our parent circuit rejected the same claim on grounds that even if the Plaintiff could demonstrate hostility on the part of local or regional officials, he could not make a similar claim as to hostility on the part of the international union. 723 F.2d 25. Indeed, in this case, the Defendant UAW sets forth, in affidavits in support of its Motion for Summary Judgment, that the PRB, the final forum for appeals brought under the provisions of the UAW constitution, is composed of individuals who are not employed by the UAW or under its jurisdiction. *See* Doc. # 14, Exh. A. If a vacancy occurs on the PRB, the President of the International Union of the UAW will appoint a member to fill the vacancy from a list submitted by the remaining members of the PRB. The UAW President's appointment must then be ratified at the next UAW constitutional convention. In short, Plaintiffs can hardly claim hostility was rampant throughout the entirety of the UAW appeals scheme.

In addition, Plaintiffs claim the fact that they were told they were no longer part of the Union excuses their failure to exhaust. Such a claim, however, is not much different than that which the Seventh Circuit faced in the *Miller* case when the plaintiff claimed he was told by local union officials that any effort to appeal his grievance internally with the Union would be useless. The Seventh Circuit rejected that excuse and held not only that the plaintiff had a duty to know his Union appeals rights but that the local Union officials' representations could themselves be the subject of an appeal. 675 F.2d at 150. Accordingly, this Court holds that, while statements made by Louis Jones and Mark Oster (*see* Doc. # 19, Affidavit of Plaintiffs) to the effect that Plaintiffs were no longer a part of the Union and that the Union did not care what happened to them, could also have been the subject of an internal union appeal by these Plaintiffs, they do not amount to an adequate excuse for failure to exhaust the remedies available to them under article 33 of the UAW constitution.

Additionally, it appears that the internal union appeals procedure would be adequate in this case to award Plaintiffs the full relief they seek under § 301 (*See* Doc. # 14, p. 8: "The Union appeals procedure could award plaintiffs the severance pay they are seeking"). In the words of the

Sixth Circuit: "In the absence of knowledge to the contrary, a reasonable person expects that the appeals procedure would bring results: else why would they be provided and required. The balance of efficiency requires the Union member to determine whether the remedy is futile." Finally, as Defendant UAW correctly asserts, the Court recognized in *Monroe v. International Union, UAW*, 540 F.Supp. 249, 258 (S.D.Ohio 1982), *aff'd* 723 F.2d 22 (6th Cir. 1983) that in the absence of specific information to the contrary, that the internal Union appeals procedure outlined in article 33 of the UAW "provides for the relatively rapid dispute of appeals."

For all the reasons outlined above, Defendant UAW's Motion for Summary Judgment must be granted as to the hybrid claim on grounds that Plaintiffs failed to exhaust their internal Union remedies. Additionally, since failure to exhaust bars suit against both the Union and the employer, *Clayton v. International Union, UAW*, 451 U.S. 679, 692, 101 S.Ct. 2088, 2097, 68 L.Ed.2d 538, summary judgment is also granted in favor of Defendant BOMAG.

The same analysis applies in Plaintiffs' claim against the Union only for breach of its duty of fair representation: exhaustion of internal Union remedies is required unless Plaintiff can show exhaustion was demonstrably futile. *See Shamblin v. General Motors Corp.*, 743 F.2d 436 (6th Cir. 1984). Plaintiffs herein have made no attempt whatsoever to grieve their claim that the Union should have secured in collective bargaining with BOMAG a seniority agreement which would have retained their recall rights. Therefore, Defendant UAW's Motion for Summary Judgment is granted in its favor as to this claim as well.[4]

In sum, Defendants' Motion for Summary Judgment on grounds that Plaintiffs' claims are barred by the statute of limitations is overruled. Summary judgment is granted in favor of the Defendants and against Plaintiff Clark for Plaintiff's failure to exhaust contractual remedies; and

summary judgment is granted in favor of Defendants and against all Plaintiffs for failure to exhaust their internal union remedies.

WHEREFORE, based upon the aforesaid, this Court finds well taken the Motion of Defendants seeking an Order of the Court granting summary judgment in their favor and against Plaintiffs. Judgment will be entered in favor of the Defendants and against the Plaintiffs. All claims of Plaintiffs are dismissed with prejudice.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**4.** Lastly, having determined that the case should be dismissed for Plaintiffs' failure to exhaust internal Union remedies, the Court need not address Defendant UAW's claim that Plaintiffs failed to demonstrate any genuine issue of material fact regarding whether the Union breached its duty of fair representation in the first instance.