974 F.2d 1340
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David HORTON, Plaintiff-Appellant,
v.
CATERPILLAR INC., and United Automobile, Aerospace and
Agricultural Implement Workers of America,
Defendants-Appellees.
 No. 91-2724.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 28, 1992.*
Decided Sept. 8, 1992.
 
 Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff David Horton brought this hybrid breach of collective bargaining agreement/fair representation suit pursuant to section 301 of the Labor-Management Relations Act of 1947, 20 U.S.C. § 185. The district court granted summary judgment in favor of defendant-employer Caterpillar and defendant-union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) on grounds that Horton did not exhaust internal union remedies. We affirm.
 
 Background
 
 2
 Horton had been employed by Caterpillar for over 20 years when he was injured on the job in January 1989 and placed on disability. At the time Horton was placed on disability, there existed between the UAW and Caterpillar a collective bargaining agreement (Agreement). Section 14.6 of the Agreement provided that an employee on disability leave may not accept outside employment without prior approval of Caterpillar. If an employee violated this provision, his employment was terminated and considered a "voluntary quit." Horton operated his own business, "Dave's Garage", and while on disability he worked there doing estimates on cars. He did not obtain Caterpillar's consent, and on March 10, 1989 Caterpillar deemed him to have voluntarily quit his employment pursuant to Section 14.6.
 
 
 3
 In accordance with the internal grievance procedures set forth in the Agreement, Horton filed a grievance with the local union. The local union failed to get Horton reinstated. Because the local union could not resolve the grievance, it was referred to the International Union for arbitration pursuant to the Agreement. UAW representative Ray Gulley then reviewed Horton's case, interviewed Horton to confirm the facts and concluded that Horton's grievance could not be won in arbitration.
 
 
 4
 On January 19, 1990, Gulley telephoned Horton and informed him of his intent to withdraw the grievance. On January 26, 1990, Horton's attorney wrote Gulley urging him to reconsider withdrawing the grievance. On January 30, 1990, UAW attorney Leonard Page wrote Horton's attorney explaining that the grievance had been dropped because the union determined that the grievance could not be successfully pursued to the International Executive Board (IEB). Page also advised Horton's attorney of Horton's appeal rights under the UAW's constitution and attached pertinent provisions of the constitution. On March 19, 1990, Horton filed an appeal to the IEB. On April 23, 1990 UAW President Owen Bieber wrote Horton informing him that his appeal had been was denied as untimely. He then attempted to appeal to the Public Review Board (PRB), but his appeal was denied because his appeal to the IEB was untimely. This suit followed.
 
 Analysis
 
 5
 We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. Santella v. Chicago, 936 F.2d 328, 331 (7th Cir.1991). Summary judgment will be upheld if the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 6
 Under the UAW constitution, Horton had 30 days from the date on which he became aware or reasonably should have become aware of the adverse decision to appeal that decision to the IEB. Horton contends that he did not become aware of the decision until his appeal was denied in April 1991. He contends that during the January 19, 1991 telephone conversation with Gulley, Gulley informed him that he merely intended to withdraw Horton's grievance, and that members of the local union lulled him into thinking that his grievance was still being considered.
 
 
 7
 The most liberal reading of the record shows that Horton had actual notice of the decision to withdraw his grievance by January 30, 1991 at the very latest. Although his attorney's January 23, 1991 letter indicates that Horton understood that an adverse decision had been made, Leonard Page's January 30, 1991 reply clearly informs Horton's attorney that his grievance had been withdrawn and specifically advises him of his appeal remedy and attaches pertinent portions of the UAW constitution.
 
 
 8
 Horton cannot claim ignorance of these communications between the UAW and his attorney. Moreover, Horton cannot rely on statements allegedly made by members of the local union. See Miller v. General Motors Corp., 675 F.2d 146, 150 (7th Cir.1982) (given well-documented UAW procedures, reliance on representations of local officials was unreasonable). As a member of the union, Horton was obligated to familiarize himself with the internal appeal procedures. Miller, 675 F.2d at 150. Horton's March appeal, coming more than 30 days after he had knowledge of the decision, was untimely. Consequently, Horton failed to exhaust his internal grievance remedies.[1]
 
 
 9
 It is well-settled that before bringing this type of hybrid action under § 301, an employee must exhaust contractual grievance and arbitration procedures. Clayton v. Automobile Workers, 451 U.S. 679 (1980). A court may excuse an employee's failure to exhaust if 1) the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks; 2) union officials are so hostile to the employee that he could not hope to obtain a fair hearing;[2] or 3) the internal appeals procedure will result in unreasonable delay. Clayton, 451 U.S. at 689.
 
 
 10
 Letter Agreement No. 13 between Caterpiller and the union, provides for reactivation of any grievance which the IEB or PRB determines to have been improperly disposed of or withdrawn. Horton does not challenge the validity of Letter Agreement No. 13 or its terms. Instead, he contends that because the Letter Agreement requires that the employee waive all damage claims against the company as a condition of reinstatement, the Letter Agreement is inadequate to award him the full relief he seeks.
 
 
 11
 Horton's argument ignores the plain language of Clayton as well as our decision in Miller. Under Clayton, an employee must exhaust internal appeals procedures if they can result in either complete relief or reactivation of his grievance. Clayton at 692. In Miller we held that under Clayton, exhaustion is required if the grievance can be reactivated even if the employee may not be able to obtain the same relief available in a § 301(a) action. Miller, 675 F.2d at 149. Because the Letter Agreement provides for reactivation, Horton is not excused from exhaustion.[3]
 
 
 12
 Horton further contends that exhaustion should be excused because the question is one involving complex matters of public policy. This contention is legally insupportable. NLRB v. Marine Workers, 391 U.S. 418 (1967), which Horton cites as sole support, is inapposite. Marine Workers stands for the narrow proposition that where a union member's grievance touches part of the public domain covered by the National Labor Relations Act, the union may not expel the member for filing an unfair labor practice complaint without exhausting internal grievance procedures. It bears no relation to the issue of exhaustion in this case.
 
 
 13
 To the extent that Horton appears to allege that exhaustion would result in unreasonable delay, his argument falls short. In his statement of facts, Horton cites to Article 6 § 6.3 of the UAW constitution to support his contention that his grievance should have been given priority because he was discharged. As Caterpillar correctly points out, Article 6 § 6.3 establishes priorities for "grievances referred to arbitration." Because Horton was not entitled to any priority under Article 6, this does not provide a basis for an unreasonable delay claim. Other than his citation to the irrelevant provision of the UAW constitution, Horton merely states in a conclusory fashion, without support, Horton merely states in a conclusory fashion, without support, that the internal appeals procedure is "unduly time-consuming." Collateral allusions to a legal issue do not require us to decide an issue, even if it is expressly presented for resolution. Mraovic v. Elgin Railway Co., 897 F.2d 268, 272 (7th Cir.1990). Because Horton failed to support his unreasonable delay argument, it is waived.
 
 Conclusion
 
 14
 Horton failed to exhaust internal appeals procedures and cannot justify excusing this failure. Therefore, defendants Caterpillar and UAW were entitled to summary judgment as a matter of law.
 
 
 15
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the cout notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Horton's contention that UAW President Bieber illegally blocked his appeal demonstrates a fundamental misunderstanding of the UAW constitution. The merits of Horton's appeal were never considered because he failed to file a timely appeal and therefore did not satisfy the jurisdictional requirements of the UAW constitution, Article 33, § 4
 
 
 [2]
 Although Horton raised the issue of hostility before the district court, he has not renewed it on appeal, and therefore it is waived. Patrick v. Jasper, 901 F.2d 561, 566 (7th Cir.1990)
 
 
 [3]
 Because we base our decision on the reactivation aspect of Letter Agreement No. 13, we decline to consider whether back pay may be obtained through the internal appeals procedure. See Miller, 675 F.2d at 148 n. 1